In the Matter of BENJAMIN LEVY, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, March 16, 1965.

*John G. Bonomi* (*Michael Franck* with him on the brief), attorney for petitioner.

*Irving Mendelson* for respondent.

*Per Curiam.* Respondent was admitted to practice in the Second Department in May, 1934. On February 4, 1963, he pleaded guilty in the Supreme Court, New York County, to a misdemeanor count of an indictment which charged him with the crimes of larceny in the second degree (Penal Law, § 1296) and two misdemeanor counts of misconduct by an attorney (Penal Law, § 273). He received a suspended sentence.

The misdemeanor to which respondent pleaded guilty charged that respondent had falsely represented to a client, whom he represented in the then Court of Special Sessions on a charge of possession of drugs, that respondent needed certain sums of money to pay the arresting police officer for favorable testimony at the trial. The client was acquitted; then paid the money demanded, and made complaint to the District Attorney. Disciplinary proceedings were commenced following respondent's conviction upon his plea of guilty.

Respondent admitted the charges; and the hearings before the Referee were concerned mostly with the presentation of mitigating circumstances and character evidence. The Referee accepted, as truthful, respondent's explanation that respondent's false representation to his client, as to the necessity for the payment of money for the arresting officer, was made to expedite and induce the payment of the fee which his client had engaged to pay. The sum requested by respondent, together with the money already received, did not exceed the fee agreed upon.

The record supports the Referee's conclusion. It appears that following the client's initial complaint to the District Attorney, immediately after respondent sought the payment, an investigation was commenced by the District Attorney and the police during which respondent was under constant surveillance for a period of six months, and his telephone wire was tapped. No evidence was discovered indicating that respondent had any improper contact with any law-enforcement official.

Respondent is 54 years old. Apart from the transgression herein, there is no record of any prior misconduct. Numerous character witnesses, of whom eight were sitting Justices in our courts, testified to respondent's good character and reputation. In the interval between his indictment and plea of guilty, respondent was the victim of a cardiac episode which necessitated absence from his office for a period of 18 months. We have also considered respondent's frank admissions of his

misconduct, and have adopted the Referee's conclusion as to the truthfulness of respondent's explanation of the circumstances and motive for his admittedly false statements. The record indicates that we are dealing with an isolated instance of misconduct and not a general course of activity. Nevertheless, the infraction was one which violated the high standards of conduct required of attorneys, impugned our Police Department and put the city to an unnecessary expense incident to its investigation of the matter reported to them by respondent's client.

Censurable as respondent's conduct may have been, it must be distinguished from the picture presented in *Matter of Ruby* (22 A D 2d 547), decided simultaneously herewith. The sum of money which respondent herein requested from his client upon the false representation that it was needed for the arresting officer constituted the balance of the fee owed by the client pursuant to a retainer agreement. The record supports respondent's explanation that his misrepresentation was calculated only to spur compliance with the client's original commitment. On the other hand, in *Ruby,* the demand on the client for money, allegedly to be used for an improper purpose, was for a sum in addition to the retainer fee agreed upon. Thus, in *Ruby* there was an attempt to overreach the client as well as an affront to the true administration of justice. Moreover, unlike the candor of respondent herein in admitting his wrong, in *Ruby* the circumstances were aggravated by Ruby's untruthful denial of complicity, despite recordings of his conversations with his client. These salient differences in the two cases warranted different dispositions in the extent of the discipline to be meted out.

In sum, in view of the respondent's commendable candor and frank admissions of misconduct, when confronted with the charges, and his complete co-operation thereafter; his history of ill health, prior to and subsequent to the charges, which resulted in prolonged periods of incapacitation; the persuasive evidence of his general good character attested to by Justices of the Supreme Court of this State, a Judge of the Federal court, a number of Assistant District Attorneys, including a head of a department, and reputable and well-regarded attorneys, we are inclined to be more lenient than we ordinarily would be. Absent these factors, the discipline would be more severe.

In view of all the circumstances, we feel that a suspension of six months would be appropriate.

Respondent should be suspended for six months.

BOTEIN, P. J., BREITEL, VALENTE, STEVENS and EAGER, JJ., concur.

Respondent suspended from the Bar for a period of six months, effective April 16, 1965.